JESSE D. HADLEY, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. That the parties afterwards "made it up," is not evidence tending to prove the shooting lawful. Neither is the fact that the prisoner obtained a warrant against the prosecutor for assault with intent to murder.
2. Dealings between the parties as landlord and tenant, or as creditor and debtor, with the terms of their contract and the state of their accounts, would not illustrate the lawfulness of this shooting. Nor would the fact that the parties were friendly immediately before and after the shooting.
3. Why a person who was requested to price the work (concerning alleged overcharges, on which the quarrel took place), declined to do it, is immaterial.
4. Neither malice nor deliberation is essential to the unlawfulness of the shooting. The shooting might be done under considerable provocation, and in the sequel of a combat in which the prisoner was blameless, and still be unlawful.
5. After a dangerous assault has been long enough over for the party assaulted to run sixty yards for a pistol and return, to shoot the first assailant then, solely because of the past assault, is unlawful, especially if the first assailant is in retreat to avoid being shot.
6. The doctrine of reasonable fear is not applicable, under the evidence.
7. Nor is the doctrine of defense of habitation.
8. Unless done in self-defense, the shooting was unlawful; and whether it was so done was fairly submitted to the jury.
9. If the court's charge, as applicable to the count on which the prisoner was convicted, was erroneous in any degree, the errors were favorable to the prisoner. Errors in respect to the count on which the prisoner was acquitted, are now immaterial.
10. The verdict is not contrary to law or to evidence.

Hadley was arraigned on an indictment containing two counts: one for assault with intent to murder, the other for unlawful shooting. On the trial, the evidence for the state was, in brief, as follows:

Prisoner owned a blacksmith shop, half of which he rented to one Ragsdale. He was in the habit of carrying work there to be done, and when he collected the rent, the amount due for such work would be deducted. After one of these settlements, prisoner became dissatisfied with the account, had it itemized, and denied some of the items. Afterwards he

went to the shop, and demanded a settlement of the matter. Ragsdale offered to leave the question to the decision of any other blacksmith, and called upon one to decide it, but the latter refused. Prisoner began to quarrel, and accused Ragsdale of stealing. The latter did not pay any attention to it until prisoner called him a " G—d d—d son of a bitch." He then seized a hammer and struck prisoner. A scuffle ensued, in the course of which prisoner also picked up a hammer. In a few minutes he tore himself loose and ran out of the door. As he did so, he threw his hammer at Ragsdale, who threw his back in return. Prisoner ran to his house, some sixty yards distant, procured a pistol, and returned. In meantime Ragsdale ran out of the shop, behind it and other buildings standing with it, and hid. Prisoner followed him, and fired at him three times, striking him once in the muscle of the arm. Ragsdale then went to his house. This was in Muscogee county, in 1876.

The evidence for defendant was, in brief, as follows :

He went to the shop on March 16th to have a settlement of the rent account. He stated that the month was out, and they must come to some conclusion. Ragsdale did not answer him. He then told Ragsdale to stop work until they settled. The latter said, "by G—d, I'll quit." Defendant replied, " It looks like you want to force me to get mad, Mr. Ragsdale. If you will quit, by G—d you quit." Ragsdale took his hammer, weighing about three or four pounds, and struck him several blows on the arm, which was raised to ward them off. Defendant seized a hammer, which weighed one or two pounds, and threw it at Ragsdale, striking him on the head. This was done as defendant ran out of the door. Ragsdale also threw his hammer. Defendant was absent about two or three minutes. One of the men in the shop urged Ragsdale to get out of the way. He did not go at once, but went outside the shop, a few yards from the door, and was there when defendant returned. After the first shot, he ran. Both men were much excited. Defendant did not apply the epithet set forth in the testimony for

the state.   Defendant did not follow Ragsdale beyond the shop.

The jury found the defendant guilty of unlawful shooting, and recommended him to the mercy of the court.

He moved for a new trial on the following, among other, grounds:

1. Because, on the cross examination of the prosecutor (Ragsdale), the court refused to allow defendant's counsel to ask him whether he and defendant did not "make it up?" whether defendant did not take out a warrant for witness for assault with intent to murder? and whether they did not agree that each should "pay his own costs and drop the matter?"

2. Because the court refused to allow defendant's counsel to ask one of the witnesses for the defense the following questions: Whether he knew anything about a contract that was made at the shop by Ragsdale and defendant? Whether defendant made arrangements with Ragsdale, and reserved the right to go into the shop at any time he pleased, and give orders generally? Whether or not witness knew that Ragsdale was indebted to defendant at the time of the difficulty, for rent?

3. Because defendant's counsel was not allowed to question one of the witnesses for the defense as to the following points: "Whether he was about the shop just before, or just after the difficulty, and whether or not he had any knowledge of a settlement between the parties?" On objection to these questions, defendant's counsel stated that he proposed to show by the witness that they were perfectly friendly, and talking of a settlement, that defendant had a right to go into the shop, demand a settlement, and if Ragsdale refused to pay, to put him out, that right being reserved in the contract.

4. Because the court refused to allow defendant's counsel to ask one of the witnesses—the party who refused to price the work done by Ragsdale for Hadley—his reason for such refusal.

5. Because the court refused to charge as follows: "If there is no express malice, and considerable provocation appears for Hadley to have done the shooting, and it further appears that the circumstances of the shooting do not show an abandoned and malignant heart, the prisoner is not guilty of an assault with intent to murder, or unlawful shooting at another. If the jury believe there was no mixture of deliberation in Hadley from the time he left the shop until he returned with the pistol, and further believe that the fight began suddenly and without premeditation on the part of Hadley, and in a sudden heat of passion he shot Ragsdale, and further believe that the circumstances of the shooting do not show an abandoned and malignant heart, then Hadley is neither guilty of an assault with intent to murder nor unlawful shooting."

6. Because the court refused to charge as follows: " If the jury believe that the shooting was a continuance of the fight first begun, they may look to the facts as to who made the first assault and its nature, and if it appears that Hadley had a right to stay in his shop and a right to ask Ragsdale to settle with him, and Ragsdale gave the first blow with an instrument likely to produce death, and Hadley escaped from the shop—a hammer weighing three pounds being thrown at him as he escaped—and that Hadley, in haste, ran to his house, and returned in a few minutes with his pistol and fired on the assailant, he is not guilty either of an assault with intent to murder or of unlawful shooting."

7. Because the court refused to charge, in substance, that it was for the jury to decide "whether or not Hadley still had a reasonable fear of death or some bodily harm from Ragsdale," at the time of the shooting.

8. Because the court refused to charge as follows: " A man has a right to protect his habitation, and use just enough force to do it, and if it is absolutely necessary to shoot a man to maintain his possession in peace, the shooting is justifiable."

9. Because the court charged as follows : " No one should

be permitted to shoot at another unlawfully. * * * See whether or not the shooting, when done, was unlawful, or was it done in his own defense? To make it lawful it should have been done in his own defense."

10. Because the verdict is contrary to law and evidence.

[Defendant having been acquitted on the first count in the indictment, the charge of the court as to it is not set forth.—R.]

The motion was overruled, and defendant excepted.

HILLIARD & RUSSELL, for plaintiff in error.

W. A. LITTLE, solicitor general, for the state.

BLECKLEY, Judge.

1. On a trial for felonious shooting, evidence that the prosecutor and the prisoner "made it up" is not admissible. Nor is evidence admissible, that immediately after the combat a warrant was obtained by the prisoner against the prosecutor for assault with intent to murder.

2. That the parties, previously to the difficulty, had made a contract and a settlement; that the prosecutor owed the prisoner for rent of the shop in which the difficulty began; that the prisoner had a right to turn the prosecutor out for non-paymen of rent; that the prisoner had reserved the right to enter the shop and give orders; and, that the parties were friendly, just before and just after the difficulty, would not tend to establish the lawfulness of the shooting, inasmuch as the shooting took place after both parties had withdrawn from the shop, and, a part of it, while the prosecutor was in rapid retreat. The prisoner did not shoot in assertion of any right as creditor or landlord, but only as an infuriated man who had, shortly before, been violently assaulted by the prosecutor.

3. When the quarrel upon which the shooting followed was touching alleged overcharges for work, the reasons of a

third person for declining to price the work shortly before the quarrel took place, are immaterial.

4. The shooting may be unlawful, though done under considerable provocation, and without malice, express or implied, and without any mixture of deliberation, and though preceded by a sudden combat in which the prisoner was blameless.

5. If a person, being in a shop where he has a right to stay, is unlawfully assaulted with a weapon likely to produce death, and, thereupon, escaping from the shop, runs to his dwelling, sixty yards distant, for a pistol, and returns instantly, finding the assailant outside the shop, with no weapons, and making no hostile demonstration, he cannot lawfully shoot at the assailant; more especially after he has fired at him once and put him in full retreat.

6. A man who was neither followed from the scene of combat, nor attacked when he voluntarily returned to it, is not in a situation to urge the fears of a reasonable man in justification of shooting done by him after returning and putting his adversary to flight.

7. Shooting at a person after he has fought you in your shop, sixty yards from your dwelling, and when he has left the shop and is trying to avoid you by running toward his own home, is not shooting in defense of habitation.

8. Under the facts of this case, if the shooting was not in self-defense it was unlawful; and the question of whether it was in self-defense was fairly submitted to the jury.

9. There was no error in the charge of the court of which the prisoner can complain, the errors, if any, being in his favor, or else relating to a count in the indictment for assault with intent to murder, on which count he was acquitted.

10. The verdict is not contrary to law or to evidence.

Judgment affirmed.